IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 7:17CR00078 |
| | ) | |
| | ) | |
| MICHAEL ANTONIO DAVID, II | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Michael Antonio David, II is before this Court, having pleaded guilty to one count of possession of a measurable quantity of cocaine base with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Based on a Total Offense Level of 23 (Presentence Investigation Report (hereinafter "PSR") at ¶ 27) and a criminal history category of II (PSR at ¶ 33), the recommended Guidelines range for imprisonment is 51 to 63 months (PSR at ¶ 52). Pursuant to the plea agreement, the defendant and the United States have jointly agreed to recommend a sentence of 60 months, which shall run "concurrent[ly] to that portion of the state sentence [he] has already served as well as the remainder of the undischarged term of [his] state sentence" (Plea Agreement at pp. 3-4). Mr. David submits this memorandum in support of this recommendation.

## I. Factual Background

Defendant Michael Antonio David, II stands convicted of a single count of possession of a measurable quantity of cocaine with the intent to distribute, stemming from events that took place on July 8, 2016. The facts are summarized in the Agreed Summary of Facts, filed previously with the Court. In short, however, police attempted a traffic stop of Mr. David's vehicle, but he did not stop; he finally pulled into a driveway and ran away on foot. Police

pursued and observed Mr. David put his hands inside his pants waistband. Police apprehended him, and he initially confessed to having had marijuana. A search of his person yielded a substance that turned out to be cocaine base, plus 14 ammunition rounds. Police found in the area of the pursuit location a plastic baggie containing what was found to be marijuana. They also found in his vehicle another plastic baggie containing what was found to be cocaine base. Further search revealed a firearm, which Mr. David admitted to throwing away during the pursuit. After the arrest Mr. David was cooperative with police.

As a direct result of these events, Mr. David originally was charged in Roanoke City with, and convicted of, with possession of cocaine with intent to distribute; and possession of a firearm while possession of cocaine (Roanoke City Circuit Court, Docket Nos. CR16-1253 and 1254). For these charges, he received a sentence of 5 years, with all but 9 months suspended; and 3 years, with all but 9 months suspended. All of his active time was suspended on the condition that he complete the Virginia Department of Corrections' Detention and Diversion Center Incarceration Program (hereinafter "detention program"). Mr. David entered into that program in Honaker, Virginia, on July 31, 2017 and was apparently participating without incident.

A two-count indictment was returned against Mr. David – for the same conduct for which Roanoke City had already prosecuted him – on December 14, 2017. On the same day, authorities executed the warrant, and the diversion program terminated Mr. David's participation before he could complete it. After an initial hearing and arraignment on January 19, 2018, Mr. David timely pleaded guilty to Count One of the Indictment on March 12, 2018. Roanoke City issued a capias for Mr. David's arrest on February 13, 2018, for an apparent probation revocation, which was initiated only because of the federal government's removal of Mr. David from the detention

program. Mr. David has not yet been served with the capias, despite being continuously held in the Roanoke City Jail. He has remained incarcerated throughout the proceedings.

## **II. Sentencing Standard**

Following *United States v. Booker*, 543 U.S. 220 (2005), federal judges no longer are required to turn a blind eye to Congress's admonition that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C § 3661. The sentencing guidelines are advisory, and in light of more recent Supreme Court holdings – **truly** advisory. While sentences that adhere to the sentencing guidelines are presumptively reasonable, sentences that deviate from the advisory range are neither presumptively reasonable nor presumptively unreasonable. Gall v. United States, 128 S. Ct. 586 (2007). A sentencing court must make an independent determination of an appropriate sentence based on all of the 18 U.S.C. Section 3553(a) factors without any "thumb on the scale favoring a guideline sentence." *United States v. Sachsenmaier*, 491 F. 3d 680, 685 (7th Cir. 2007) and keeping in mind that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996).

The primary mandate of 18 U.S.C. § 3553(a) is that the District Court impose a sentence "sufficient, *but not greater than necessary*, to comply with the purposes" of punishment as set forth in subdivision (a)(2) of the statute. Id. (emphasis added). The four purposes identified are: retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to

provide just punishment for the offense”), deterrence, incapacitation (“to protect the public from further crimes of the defendant”), and rehabilitation (“to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner”). In determining a sentence that is sufficient, but not greater than necessary, the Court is directed to consider several factors: the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the advisory sentencing guideline range, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution. *Id.*

## III. Calculation Under The Advisory Guidelines

Mr. David’s base offense level under the guidelines is 24. With 2 points added for possession of a firearm at the time of the offense; and 3 points’ credit for acceptance of responsibility, the total offense level is 23 (PSR at ¶¶ 18-23). As noted, this results in a guidelines range of 51 to 63 months based on Mr. David’s criminal history category of II (PSR at ¶ 33). The joint recommended sentence pursuant to Rule 11(c)(1)(C) is 60 months; Mr. David agrees to be sentenced at 60 months, which is within his calculated guideline range.

## IV. 18 U.S.C. § 3553(a) Factors

### A. Nature and Circumstances of the Offense

The facts have been summarized in the PSR and the agreed statement of facts. Mr. David admits that he disobeyed the law and regrets that misconduct, along with running from the officers; he admitted his involvement in the drug trade and cooperated with officers after his arrest. Mr. David timely entered his plea of guilty and has accepted responsibility for his actions.

**B. Characteristics of the Defendant**

Mr. David is 20 years old, but he was only 18 at the time of the criminal conduct that led to his charges in Roanoke City and in the United States District Court. A lifelong resident of Roanoke, Virginia, Mr. David reports a stable environment during his childhood; he reports no abuse. His parents separated when he was 15 years old, resulting in his staying with his mother from that point on. As of right now, Mr. David does not know the whereabouts of his father. Mr. David has one daughter, Michaela David, who is 9 months old and lives with her mother in Roanoke (PSR at ¶¶ 40-42).

Mr. David withdrew from school in the ninth grade and is currently studying for the GED examination. At sixteen, he began using marijuana, a habit he continued until his arrest earlier this year. He worked at CEI and Zumiez in 2015 and 2016, before his arrest in 2016. Mr. David reports using marijuana on a daily basis from 2012 to 2016, and was a less frequent user of other substances, including Molly and Xanax. He reports never having had any substance abuse treatment but admits that he could benefit from it and asks that the Court recommend that he attend RDAP during his incarceration (PSR at ¶¶ 46-49).

Mr. David's legal troubles began in 2014, when he was 16. He was convicted of tampering with a vehicle first, and then he was charged with assault and battery. For the latter charge he received a suspended term of 10 days in a detention home, contingent on his completion of an undetermined length of supervised probation. On September 22, 2016, he was released from probation (PSR at ¶¶ 28-29). It is unclear to the undersigned whether this is an actual conviction, as it appears to be a diversionary outcome. Regardless, he received 1 criminal history point for that conviction. He received another 2 points for the instant charge occurring

while he was on probation (PSR at ¶¶ 30-32).

Before the events on July 8, 2016, Mr. David had not been convicted of a felony offense. In the Roanoke City matter – which involves the same conduct for which he has been prosecuted in federal court – Mr. David pled guilty to a felony drug charge and a felony firearm charge with the promise that if he successfully completed the diversion program offered by the Virginia Department of Corrections, he would serve no active incarceration (PSR at ¶ 30). Dutifully he entered the program on July 31, 2017 – over a year after his charge initiated. It appears he was doing well, and he was expecting to be able to graduate from the program, when the federal felony indictment for possession of cocaine base with the intent to distribute and for possession of a firearm in the furtherance of a drug trafficking crime was returned on December 14, 2017. That set off the chain of events whereby Mr. David was terminated from the diversion program, arrested and now forced to relitigate the same conduct he was attempting to right with the state. The state filed for probation revocation proceedings for noncompletion of the diversion program, which to date have not been served on Mr. David and which remain unresolved. *Id.* By the date of sentencing in the instant case, Mr. David believes that he will have served a total 18 months of time either attributable to the state sentence or unattributed. Eighteen months is equal to the active time Mr. David would have had to serve if he had not completed the diversion program, and we ask that the Court credit that time toward his sentence, for a total sentence of 42 months.

Mr. David hopes to return to Roanoke upon completion of his sentence, in order to reunite with his mother and his child. Having never served any sentence of incarceration before the incident on July 8, 2016, 60 months – with credit given for the time he has served while in state custody – will be an adequate amount of time to punish Mr. David and will prove to be a

significant reminder to him to obey the law.

**C. Kinds of Sentence Available and Guidelines Recommendation**

Mr. David's conviction is for a Class C felony. The maximum punishment for the offense is imprisonment for 20 years. There is no mandatory minimum (PSR, p. 1). The guidelines range is 51 to 63 months, and both the United States and the defendant have agreed to jointly recommend 60 months' incarceration. By our calculation, Mr. David will have served 18 months in state custody by the time of sentencing. We respectfully request in this Memorandum that the Court follow the joint recommendation and sentence Mr. David to a total sentence of 42 months.

**D. Avoiding Unwarranted Sentence Disparity**

18 U.S.C. § 3553(a) speaks of the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The provision seeks uniformity in a broad sense but not at the expense of an individualized sentence based on the circumstances of the offense and the background of the defendant.

Here, the guidelines call for a sentence of between 51 and 63 months. As noted above, however, the parties have agreed to jointly recommend a sentence of 60 months. This recommendation appropriately takes into account the circumstances of Mr. David's actual offense, his background and the sentences one would expect for similarly situated defendants – a defendant who had a record of two juvenile misdemeanors before his Roanoke City felony conviction for conduct relevant to this charge. Mr. David is held responsible for a significant amount of drug weight, and he did not initially conduct himself well once he became aware of the police. Once Mr. David was apprehended, however, he was able to reflect on his actions and

cooperate with the police. We submit that his ill-advised actions were those of a young man who was not thinking clearly and followed his instinct to get away from the authorities, knowing he was involved in criminal activity. When caught, however, he understood the gravity of his situation and was honest with the police.

The defendant concurs with the United States in its recommendation of a sentence of 60 months, with credit for time in his Roanoke City case (18 months), as it is a sentence within the guidelines and will address all of the concerns of the court, as it takes into account relevant conduct, both charged and uncharged.

**E. Purposes of Sentencing Under 18 U.S.C. § 3553(a)(2)**

Congress has recognized four purposes of sentencing, often summarized as retribution, general deterrence, specific deterrence/incapacitation, rehabilitation. 18 U.S.C. § 3553(a)(2). Mr. David submits that a total sentence of 42 months is a fair and reasonable one under the circumstances. Such a sentence takes into account the seriousness of the offense but also gives Mr. David appropriate credit for his relatively clean record, for accepting responsibility for his actions, and for his youth. A sentence of 60 months – minus the 18 months of state time for relevant conduct – is a significant deterrent to those contemplating similar offenses but also conveys the message that leniency is available to those who are young and appropriately remorseful.

## V. Conclusion

For the reasons stated, Michael Antonio David, II respectfully submits that a total sentence of 42 months is a reasonable sentence and asks the Court to so sentence him.

Respectfully submitted,

MICHAEL ANTONIO DAVID, II

By: /s/ Allegra M.C. Black
Of Counsel

Allegra M.C. Black, Esq. (VSB No. 46188)
Assistant Federal Public Defender
Office of the Federal Public Defender
210 First Street, S.W., Suite 400
Roanoke, Virginia 24011
(540) 777-0880 Telephone
(540) 777-0890 Facsimile

*Counsel for Defendant Michael Antonio David, II*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of June 2018, a true copy of the foregoing document was electronically filed with Julia C. Dudley, Clerk, United States District Court, 210 Franklin Road, S.W. Roanoke, VA 24011 and will be forwarded using the CM/ECF system to Assistant United States Attorney Rick A. Mountcastle, counsel for the United States.

By: /s/Allegra M.C. Black
Allegra M.C. Black